**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MICHAEL ROBINSON,**

          **Plaintiff,**                **CIVIL ACTION NO. 15-cv-14345**

       **v.**                     **DISTRICT JUDGE TERRENCE G. BERG**

**DONNA BEAUVAIS,**              **MAGISTRATE JUDGE MONA K. MAJZOUB**

          **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Michael Robinson, a former prisoner at the Macomb Correctional Facility in New Haven, Michigan,[1] filed this *pro se* matter under 42 U.S.C. § 1983 against Defendant Donna Beauvais, an employee of the Michigan Department of Corrections ("MDOC"). (Docket no. 1.)  Plaintiff alleges Defendant violated his First and Eighth Amendment rights by initiating and approving his transfer from a residential treatment program to a maximum security facility, in retaliation for Plaintiff filing a grievance against another MDOC employee, among other things.  (*Id.*)  Plaintiff seeks compensatory and punitive damages, court costs, and any other relief that the Court deems just and proper.

Before the Court is Defendant's Motion for Summary Judgment.  (Docket no. 18.) Plaintiff filed a Response to the Motion (docket no. 19), and Defendant filed a Reply (docket no. 20.)  Plaintiff also filed a "Reply to Defendant's Reply."  (Docket no. 21.)  All pretrial matters have been referred to the undersigned for consideration. (Docket no. 12.)  The undersigned has

---

[1] Plaintiff is currently imprisoned at the Federal Correctional Institution in Yazoo City, Mississippi.  (Docket no. 22.)

reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

## I.   RECOMMENDATION

For the reasons that follow, the undersigned recommends that Defendant's Motion for Summary Judgment (docket no. 18) be **DENIED**.

## II.   REPORT

### A.  Factual Background

Plaintiff's claims relate to his transfer from a residential treatment program in the Macomb Correctional Facility, where Plaintiff was receiving treatment for his mental health issues.  On June 23, 2015, Plaintiff alleges that he approached Defendant to inform her that he was having suicidal thoughts, and to request a change in his psychotropic medications, which he believed were no longer working.  (Docket no. 1 at 2.)  Plaintiff also filed a formal Health Care Request.  (*Id.* at 17.)  Defendant allegedly responded by telling Plaintiff to "stop taking your medications, if they are not working." (*Id.* at 2.)  At the same time, Defendant also allegedly told Plaintiff that she was going to have him transferred to a Level 5 facility (maximum security), because he filed a grievance against another MDOC employee and because she believed Defendant played a role in an assault on a third MDOC employee.  (*Id.*)

The following day, on June 24, 2015, Plaintiff filed a Step I grievance against Defendant. (*Id.* at 8-9.)  The grievance recites the statements and threats allegedly made by Defendant, and includes a statement from another prisoner who allegedly witnessed the encounter between Plaintiff and Defendant.  (*Id.* at 9.)  Two days later, on June 26, 2015, Defendant allegedly initiated Plaintiff's transfer out of the residential treatment program and into the maximum

security facility.  The state of Plaintiff's mental health continued to decline, and while in the process of being transferred, Plaintiff attempted suicide.  (*Id.* at 3.)

MDOC issued a response denying Plaintiff's Step I (first level) grievance on August 20, 2015.  The summary of the response states, "[g]rievant does not state what resolution he is seeking and he has since transferred to a different facility.  Medication prescription is at the discretion of the treating Psychiatrist."  (*Id.* at 15.)  Plaintiff claims that he requested the proper form to file an appeal (Step II) of the denial of his Step 1 grievance, but that he never received the Step II form.  (*Id.* at 4.)

Plaintiff filed the instant complaint on December 11, 2015, alleging that Defendant violated his First and Eighth Amendment rights.  (*Id.* at 5.)  Defendant then filed a Motion for Summary Judgment, claiming that the case should be dismissed because Plaintiff did not exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a).  (Docket no. 18.)  Plaintiff concedes that he did not file an appeal of MDOC's denial of his Step I grievance, but claims that he was prevented from fully exhausting the administrative process because his request for the Step II form was never fulfilled.  (Docket no. 19 at 1.)  Defendant believes that Plaintiff is lying about having requested the appeal form.  (Docket no. 18 at 12-13.)

### B.  Governing Law

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

Defendant argues that summary judgment is appropriate because the undisputed facts show that Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA). (Docket no. 18.) The PLRA requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

4

until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90 (citation omitted).

MDOC's administrative policies (*see* docket no. 18-2) require a prisoner to file a Step I grievance within five days of attempting to informally resolve the grievable issue with prison staff.  MDOC Policy Directive 03.02.130(V).  The grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). MDOC is required to respond within fifteen business days, unless an extension is granted. MDOC Policy Directive 03.02.130(X).  If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, within ten business days of receipt of the response or, if no response is received, "within ten business days after the date the response was due."  MDOC Policy Directive 03.02.130(BB).  A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form [], to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due . . . ." MDOC Policy Directive 03.02.130(FF).  A prisoner's administrative remedies are exhausted

once his complaints have been grieved "through all three steps of the grievance process in compliance with [the] policy."  MDOC Policy Directive 03.02.130(B).

Defendant asserts that Plaintiff failed to properly exhaust his administrative remedies through the grievance process because he never appealed the denial of his Step I grievance. (Docket no. 18 at 6-7.)   Plaintiff acknowledges that he did not complete the administrative process, but claims he was prevented from doing so.  Attached to the Complaint is a copy of a letter he allegedly sent to Grievance Coordinator Taylor on August 24, 2015, requesting the appropriate form to file a Step II and Step III appeal (Docket no. 1 at 19.)  He claims that Grievance Coordinator Taylor never provided him the form.  (*Id.* at 3.)  Defendant disputes the fact that Plaintiff requested the form.  (Docket no. 18 at 12-13.)  Defendant also argues (for the first time in her Reply) that, even if Plaintiff did request the form, the request was untimely under MDOC rules and therefore Plaintiff still failed to properly exhaust the administrative process.  (Docket no. 20 at 2-3.)

Whether Plaintiff actually made the request for the form from Grievance Coordinator Taylor is a clear question of fact: Plaintiff claims he made the request and has attached a letter in support to his Complaint (docket no. 1 at 19); Defendant claims Plaintiff did not make the request, dismissing the letter as "self-serving and unsworn."  (Docket no. 18 at 12-13.)  The letter itself may be unsworn, but in his Complaint and in his Response to the Motion, Plaintiff swears that he made the request.  (Docket no. 1 at 4, 6; docket no. 19 at 1-2.)  Moreover, the evidence must be viewed in the light most favorable to Plaintiff.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).  Finally, if Plaintiff did request the form but Grievance Coordinator Taylor never provided it, Plaintiff may have been prevented from exhausting the administrative process,

6

because MDOC rules require prisoners to use the form when filing an appeal.  *See* MDOC Policy Directive 03.02.130(BB); *see also, e.g.*, *Palmer v. Hessbrook*, no. 09-14642, 2012 WL 4364654, at *3 (E.D. Mich. Sept. 25, 2012) (citation omitted) ("When a plaintiff asserts that possible misconduct by prison officials prevented the plaintiff form having his grievances heard, the plaintiff may be able to avoid the proper exhaustion requirement.").  Summary Judgment is therefore inappropriate on this basis.

In her Reply, Defendant also contends that, even if Plaintiff did request the form from Grievance Coordinator Taylor, the request was untimely under MDOC administrative policy directives, and therefore Defendant is entitled to summary judgment.  (Docket no. 20 at 2-3.) The relevant policies provide:

> X. After receipt of the [Step I] grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected. . . . If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due. . . . The due date shall be within 15 business days after receipt of the grievance unless an extension is granted . . . .
> . . . .
>
> BB.  A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response.  To file a Step II grievance, **the grievant must request a Prisoner/Parolee Grievance Appeal** (CSJ-247B) **from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator . . . within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due**, including any extensions.

MDOC Policy Directives 03.02.130(X), (BB).

Defendant's position is that, under these rules, Plaintiff was required to request the form and file the Step II appeal within ten business days of the date MDOC's response to the Step I grievance was first due, regardless of when MDOC actually completed and returned the response

to Plaintiff.  Thus, according to Defendant, if Plaintiff's Step I grievance was filed on June 24, 2015, then MDOC's response was due on July 15, 2015.  If MDOC's response was due July 15, 2015, then Plaintiff's Step II appeal was due on approximately July 29, 2015 even though Plaintiff did not actually receive MDOC's response to his Step I grievance until late August.

Defendant's position fails.  The language in Policy Directive 03.02.130(BB) requiring a Step II appeal to be filed "within ten business days after the date the response was due," applies in situations where "no response was received."  Here, a response *was* received from MDOC, albeit untimely.  Policy Directive 03.02.130(BB) thus required Plaintiff to file the appeal "within ten business days after receiving the Step I response," which Plaintiff allegedly attempted to do.  Plaintiff's Step I grievance is dated August 18, 2015.  (Docket no. 1 at 15.)  Plaintiff claims he received it two days later, on August 20, 2015, and then requested the appeal form on August 24, 2015.  This means that, at the time of the alleged request, Plaintiff had at least four days to complete the appeal form and return it to the Step II Grievance Coordinator.  Assuming for the purposes of the Motion that Plaintiff actually did request the form, as discussed above, the request was not untimely.  Summary judgment in favor of Defendant is therefore not warranted on this basis.

### D.  Conclusion

There is a question of fact regarding whether Plaintiff requested a Step II appeal form and, if so, whether he was prevented from fully exhausting the available administrative remedies.  If Plaintiff did request the form as alleged, the undersigned finds the request was timely under MDOC Policy Directive 03.02.130(BB).

For these reasons, it is recommended that the Court **DENY** Defendant's Motion for Summary Judgment (docket no. 18).

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  September 28, 2016          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

    I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  September 28, 2016        <u>s/ Lisa C. Bartlett</u>
                                         Case Manager